**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**CLIFF HARDY**                                                                            **PLAINTIFF**

**V.**                                                        **CIVIL ACTION NO. 1:08-CV-28-SA-JAD**

**CITY OF TUPELO, MISSISSIPPI**                                        **DEFENDANT**

**MEMORANDUM OPINION**

Before the Court is the Defendant's Motion for Summary Judgment [70]. For the reasons stated below, the Defendant's Motion for Summary Judgment is denied as to the Plaintiff's First Amendment and Title VII claims.

**I. Factual and Procedural Background**

This case stems from a statement made by the Plaintiff, Cliff Hardy, at a community meeting to discuss race issues in Tupelo, Mississippi, on October 12, 2006. At that time, Hardy was employed by the Tupelo Police Department (TPD or the Department) as a Captain. He also served as the Department's internal affairs investigator, in addition to other responsibilities. At the public meeting, Hardy claimed that his friend, Robert Hall, the former Deputy Chief of the TPD, had been "persecuted" during his tenure as Deputy Chief. Hardy suggested that he believed Hall, an African-American man, had been targeted for investigation, prosecution, and demotion because of his race. Hardy also related an encounter that he had with investigators from the Mississippi Bureau of Investigations (MBI), suggesting that he had been mistreated because of his support for Hall.

On November 7, 2006, Hardy was removed from his position as internal affairs investigator. On March 5, 2007, Hardy was removed from his other assignments and reassigned to the Tupelo Apartment/Housing Authority Patrol. On March 9, 2007, Hardy tendered his notice of retirement, effective May 1, 2007.

On February 11, 2008, Hardy filed a complaint, alleging that the City of Tupelo is liable for violations of Title VII, the free speech provisions of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and 42 U.S.C. § 1981. On March 13, 2009, Tupelo filed its Motion for Summary Judgment, and the Court now addresses that motion as it applies to the Plaintiff's First Amendment and Title VII claims.

In his response to the Defendant's Motion for Summary Judgment, the Plaintiff abandoned his claims under the Equal Protection Clause of the Fourteenth Amendment and Section 1981. However, the Plaintiff has recently filed a motion to reassert those claims [83]. The Court awaits the parties' briefing on the Motion to Reassert, and it expresses no opinion as to that motion or the Defendants' initial Motion for Summary Judgment as to the Section 1981 claim.

## II. Summary Judgment Standard

Upon consideration of a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("the burden on the moving party may be discharged by 'showing'... that there is an absence of evidence to support the nonmoving party's case"). The burden then shifts to the nonmovant to "go beyond the pleadings and by... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex Corp., 477 U.S. at 324, 106 S. Ct. 2548 (citing FED. R. CIV. P. 56(c), (e)). The burden is not discharged by "mere allegations or denials." FED. R. CIV. P. 56(e). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." Agnew v. Wash. Mut. Fin. Group, LLC, 244 F. Supp. 2d 672, 675 (N.D. Miss. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202

(1986)).

Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. 2548; FED. R. CIV. P. 56(c); see also Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The Court is not to weigh the evidence or engage in credibility determinations. Anderson, 477 U.S. at 249, 106 S. Ct. 2505; Deville v. Marcantel, 2009 U.S. App. LEXIS 9403, *10 (5th Cir. May 1, 2009). "[T]he court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Deville, 2009 U.S. App. LEXIS 9403 at *10.

### III. Discussion

**A.     First Amendment Claim**

To prevail on a First Amendment retaliation claim, a plaintiff must show:

> (1) they suffered an adverse employment decision, (2) their speech involved a matter of public concern, (3) their interest in commenting on matters of public concern outweighs [their] employer's interest in promoting efficiency, and (4) their speech motivated the adverse employment decision.

Blackwell v. Laque, 275 Fed. Appx. 363, 368-69 (5th Cir. 2008) (citing Stotter v. Univ. of Tex. at San Antonio, 508 F.3d 812, 825 (5th Cir. 2007)). The Defendant argues that summary judgment in its favor is appropriate based on two of the above elements. It argues 1) that its interest in the efficient operation of the police department outweighs the Plaintiff's interest in the speech at issue, and 2) that the Plaintiff has not shown that the speech at issue caused the adverse employment actions.

3

*1. Pickering Analysis*

Generally, the Supreme Court has held that speech is protected by the First Amendment when the interests of the employee "as a citizen in commenting upon matters of public concern" outweigh the interests of the state "as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Board of Educ., 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968). Interpreting Pickering, the Fifth Circuit Court of Appeals has stated that the Court is to consider the following non-exclusive list of factors:

> (1) the degree to which the employee's activity involved a matter of public concern; (2) the time, place, and manner of the employee's activity; (3) whether close working relationships are essential to fulfilling the employee's public responsibilities and the potential effect of the employee's activity on those relationships; (4) whether the employee's activity may be characterized as hostile, abusive, or insubordinate; (5) whether the activity impairs discipline by superiors or harmony among coworkers.

Jordan v. Ector County, 516 F.3d 290, 299 (5th Cir. 2008) (quoting Brady v. Fort Bend County, 145 F.3d 691, 707 (5th Cir. 1998)).[1]

In balancing the interests against one another, the Court "must remain mindful that creating room for free speech in a hierarchical organization necessarily involves inconveniencing the employer to some degree." Salge v. Edna Indep. Sch. Dist., 411 F.3d 178, 192 (5th Cir. 2005) (citations omitted). However, "because police departments function as paramilitary organizations charged with maintaining public safety and order, they are given more latitude in their decisions

---

[1]The Court is aware of decisions from the Fifth Circuit Court of Appeals that articulate a set of three considerations: "(1) whether the speech was likely to generate controversy and disruption; (2) whether the speech impeded the general operation of the department; and (3) whether the speech affected the working relationships necessary to the proper functioning of . . . [Department] administration." Davis v. Ector County, 40 F.3d 777, 783 (5th Cir. 1994). However, more recent decisions use the five-factor analysis related above, which incorporates the same considerations as the three-factor analysis.

4

regarding discipline and personnel regulations than an ordinary government employer." Nixon v. City of Houston, 511 F.3d 494, 498 (5th Cir. 2007) (citing Tindle v. Caudell, 56 F.3d 966, 971 (8th Cir. 1995)). Ultimately, the government has the burden of proving that its interest outweighs the employee's interest. U.S. Dep't of Justice v. FLRA, 955 F.2d 998, 1005 n. 7 (5th Cir. 1992) (en banc).

First, the Court considers the degree to which the activity related to a matter of public concern. Jordan, 516 F.3d at 299. "The more central a matter of public concern the speech at issue, the stronger the employer's showing of counter-balancing governmental interest must be." FLRA, 955 F.2d at 1006 (quoting Coughlin v. Lee, 946 F.2d 1152, 1157 (5th Cir. 1991)); see also Jordan, 516 F.3d at 299. In this case, the Plaintiff publicly suggested that former Deputy Chief Robert Hall was targeted for investigation and prosecution because of his race.

"There is perhaps no subset of matters of public concern more important than bringing official misconduct to light." Davis, 40 F.3d at 782.[2] Speech on such issues is particularly important when it involves the operation of a police department. Kinney v. Weaver, 367 F.3d 337, 361 (5th Cir. 2004). Therefore, the Plaintiff's speech concerned a matter of very high public concern: allegations of racial discrimination in the operation of a police department. A heavy burden awaits any party seeking to justify an adverse employment action allegedly caused by such speech.

Next, the Court considers the time, place, and manner of the speech. Jordan, 516 F.3d at 299.

---

[2]See also Kennedy v. Tangipahoa Parish Library Bd. of Control, 224 F.3d 359, 373 n. 16 (5th Cir. 2000) ("While no case in this Circuit specifically defines 'official misconduct' or 'wrongdoing,' the term clearly envelopes conduct exposing the state to mere civil liability.") (citing Connick v. Myers, 461 U.S. 138, 148 n. 8, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983) (the right to protest racial discrimination is a matter inherently of public concern)).

5

Any legitimate public interest in the subject matter of the speech must be "tempered by considerations of whether [Plaintiff's] position in the workplace made [him] an informed and appropriate speaker and whether" the Plaintiff's concerns were communicated "at the appropriate time under the circumstances." Davis v. Allen Parish Serv. Dist., 210 Fed. Appx. 404, 413 (5th Cir. 2006). The Defendant argues that the manner in which the Plaintiff spoke created problems for TPD, pointing out that the Plaintiff never approached the Chief of Police about his concerns, opting, rather, to give a statement in a public meeting. However, the very purpose of the meeting was the discussion of racial issues in the Tupelo community.

It is noteworthy that the Plaintiff was the Department's internal affairs investigator, which means that he would frequently be in a position to know more than the average officer about what was going on in the Department. See Davis, 210 Fed. Appx. at 410 (". . . it is proper to consider the position of the speaker within the workplace and how the position relates to the speaker's familiarity with or access to information about the issues on which she speaks."). However, the Plaintiff was not investigating the Hall incident, and the knowledge that formed the basis of his speech was generally the same as any other officer's. The Plaintiff was in a position, though, to know more than the average citizen on the subject, as he was an experienced police officer.

The Defendant argues that the Plaintiff, as the internal affairs investigator, had a responsibility to avoid even the appearance of any predisposition concerning the officers whom he may potentially have to investigate. The Fifth Circuit Court of Appeals has considered whether the position held by the speaker is one that requires trust or confidence. If the position requires confidentiality or policymaking, the public employee receives less First Amendment protection. Charles v. Grief, 522 F.3d 508, 514 (5th Cir. 2008) (when considering whether speech was pursuant

to official duties, court noted that position was not one that required trust and confidence); Vojdovich v. Lopez, 48 F.3d 879, 885 (5th Cir. 1995) (noting that the government's interests more easily outweigh the public employee's interests if the public employee is in a confidential or policymaking position); see also Gillespie v. City of Macon, 485 F. Supp. 2d 722, 728 (S.D. Miss. 2007) (noting that government employees in "confidential" positions receive less First Amendment protection than other employees). The Plaintiff, who held a position of trust and confidence, did not attempt to express his concerns through official, confidential channels.[3] The Court notes again, however, that the Plaintiff was not the party conducting the investigation of Robert Hall. In fact, the Department did not conduct the investigation; it asked an outside agency to do so.

Next, the Court considers whether the speech at issue can be considered hostile, abusive, or insubordinate. Jordan, 516 F.3d at 299. The Plaintiff's statement was insubordinate. The Plaintiff violated the Department's General Order 90-4. Section 30 of the General Order states:

> Employees shall not address public gatherings, appear on radio or television, prepare any articles for publication, act as correspondents to a newspaper or a periodical, release or divulge investigative information, or any other matters without proper authority. Officers may lecture on "police" or other related subjects only with prior approval of the Chief of Police or the Deputy Chief.

Acts of insubordination - such as violations of departmental policy - weigh in favor of the government's interest in efficiency. Nixon, 511 F.3d at 499. The Court also notes that Plaintiff's

---

[3]Nothing in this opinion should be construed as setting bright-line rules for what is or is not appropriate speaking behavior for internal affairs investigators, or police officers in general. The Pickering balancing test, rather than setting bright-line rules, outlines general topics that a court should consider when deciding whether a government employee's interest in speaking outweighs a government employer's interest in efficiency. See Davis, 210 Fed. Appx. at 411-12 (Pickering balancing requires particularized consideration of the facts of each case; the non-exclusive list of factors is a guide to determining the parties' interests and the respective weight of those interests.).

statements could be considered hostile toward the Mississippi Bureau of Investigations (MBI).

Finally, the Court will consider the potential and actual impact of the speech on the operation of the Department, combining the third and fifth factors articulated by the Fifth Circuit Court of Appeals: whether close working relationships are essential to fulfilling the employee's public responsibilities and the potential effect of the employee's activity on those relationships; and whether the activity impairs discipline by superiors or impairs harmony among coworkers. See Jordan, 516 F.3d at 299. These two factors both implicate the broader concern of whether the speech activity actually or potentially disrupts the operation of the government employer. See Vojvodich, 48 F.3d at 885 (purpose of the outlined factors is to facilitate balancing of speech interests against alleged disruption to the effective and efficient operation of the government employer's responsibilities).

Prudent administrators are not forbidden from taking action before a risk turns into an actual disruption. Kinney, 367 F.3d at 364. "[C]ourts have consistently given 'substantial weight to government employers' reasonable predictions of disruption." Nixon, 511 F.3d at 499 n. 8 (quoting Waters v. Churchill, 511 U.S. 661, 673, 114 S. Ct. 1878, 128 L. Ed. 2d 686 (1994)); see also Connick, 461 U.S. at 152, 103 S. Ct. 1684, 75 L. Ed. 2d 708 ("[A] government employer need not produce evidence of actual harm or disruption to governmental operations.").

The Defendant argues that the speech at issue caused public embarrassment to the Department. The reputation of a police department is a legitimate and substantial governmental concern, and damage to it "would undoubtedly impair the proper performance of [police department] functions." Nixon, 511 F.3d at 499 (citing City of San Diego v. Roe, 543 U.S. 77, 81, 125 S. Ct. 521, 160 L. Ed. 2d 410 (2004)). The parties have not presented any evidence as to the impact on

the Department's reputation, but the Department's prediction of damage to its reputation is reasonable, given the severity of the allegations made by the Plaintiff. See Nixon, 511 F.3d at 500-01 (it was reasonable for a police department to believe that a police officer's newspaper columns and the caustic remarks therein would impair the proper performance of its functions); City of San Diego, 543 U.S. at 81, 125 S. Ct. 521 (court held that a police department had a legitimate and substantial interest in preventing an officer from selling pornographic videos of himself on eBay, in which he was clearly identified as a law enforcement officer).

As further evidence of actual and potential disruption, the Defendant has submitted affidavits from several officers, including the Chief himself, expressing concern over the actions of the Plaintiff. Among the comments are allegations that the Plaintiff, during his tenure as internal affairs investigator, gave the appearance of "actively trying to drum up alleged wrongdoing by patrol officers." More than one officer expressed doubts as to the Plaintiff's ability to conduct an impartial investigation as an internal affairs officer, given his public statements. The Plaintiff himself has admitted that he believed other officers bore animosity toward him to the degree that they would not provide him with back-up on dangerous calls. The Court also notes that the Plaintiff's statements concerning his encounter with officers from MBI could reasonably be expected to affect TPD's working relationship with that agency.

The Fifth Circuit Court of Appeals has noted that police departments are given more latitude in their disciplinary and personnel decisions because of the paramilitary nature of police departments. Nixon, 511 F.3d at 498. In that same case, which involved a police officer in Houston, the court also stated:

> Given the exposure of Nixon's articles to the Houston community and the caustic statements in some of his articles, it was reasonable for HPD to believe that his

9

> articles would negatively impact the relationship between HPD and Houston citizens and generally bring 'the mission of the [police department] and the professionalism of its officers into serious disrepute' - certainly legitimate and substantial interests, harm to which would undoubtedly impair the proper performance of HPD functions.

Id. at 500-01 (quoting City of San Diego, 543 U.S. at 81, 125 S. Ct. 521). The court ultimately decided that "Nixon's interest in commenting on matters of public concern - although significant - [is] outweighed by the government's substantial interests in the efficient provision of government services." Id. at 499.

While Nixon is instructive as to the importance of the government's interest in efficiency and reputation, its usefulness is limited by the fact that the speech at issue in the present case is of substantially greater public concern than Nixon's speech. The value of Nixon's speech was "somewhat diminished by the fact that a significant amount" of it was mere denigration of segments of the city's population. Nixon, 511 F.3d at 501. His newspaper columns were not legitimate criticism; rather, they were a "direct blow to the relationship with the community" that the department served. Id. The speech at issue in the present case, however, involves a matter of public concern that carries a very significant amount of weight: allegations of racial discrimination in the operation of a police department.

In the end, the Defendant has not carried its burden in establishing that its interests as an employer outweigh the significant interest in potentially exposing official misconduct in the operation of a police department. The potential for disruption that the City has shown is insufficient to overcome the weighty public interest implicated by the Plaintiff's speech.[4] At the summary

---

[4]In so holding, the Court does not foreclose the possibility that a government employer may prevail on a motion for summary judgment in spite of a plaintiff's allegations of official misconduct or malfeasance. Indeed, the Court approaches the topic in the same manner it approaches any other factual dispute upon consideration of a motion for summary judgment:

10

judgment stage, "the [C]ourt must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Deville, 2009 U.S. App. LEXIS 9403 at *10. Therefore, the Court finds that, for purposes of the Defendant's Motion for Summary Judgment, the Plaintiff's interest in speaking on a matter of public concern outweighs the Defendant's interest in efficiency.[5]

---

"[Viewing] the facts in the light most favorable to the non-moving party and draw[ing] all reasonable inferences in its favor." Deville, 2009 U.S. App. LEXIS 9403 at *10.

[5]There is a group of decisions by the Fifth Circuit Court of Appeals that emphasize the potential truth or falsity of speech alleging official misconduct. Brawner v. City of Richardson, 855 F.2d 187, 192 (5th Cir. 1988) ("...if the allegations of internal misconduct are indeed true, [the plaintiff's] statements could not have adversely affected the proper functioning of the department since the statements were made for the very reason that the department was not functioning properly due to corruption."); Warnock v. Pecos County, 116 F.3d 776, 781 (5th Cir. 1997) ("But if [the plaintiff's] allegations are true, ...[the defendants] may not rely on the county's interest in an efficient workplace. When a public employer grants an employee the task of serving as ombudsman within a particular field, it may not fire that employee for accurate and thorough criticisms of the relevant government practices."); Wallace v. County of Comal, 400 F.3d 284, 290 (5th Cir. 2005) ("...defendants may not rely on the county's interest in an efficient workplace if the plaintiffs' allegations of official misconduct are true.").

There are also decisions that consider whether the employee's allegations of official misconduct were made in good faith. Wilson v. Univ. of Tex. Health Ctr., 973 F.2d 1263, 1270 (5th Cir. 1992) ("If a jury determines that [the plaintiff] reported sexual harassment in good faith, then [the defendant's] interest in maintaining a police force that is free of sexual intimidation, which [the plaintiff's] good faith reports would serve, outweighs any interest in departmental efficiency and harmony."); Victor v. McElveen, 150 F.3d 451, 458 (5th Cir. 1998) ("The mere fact that racial issues can be divisive, however, does not excuse retaliation against an employee who in good faith raises perceived racially discriminatory practices in an attempt to promote the welfare of the governmental department."); Branton v. City of Dallas, 272 F.3d 730, 743 (5th Cir. 2001) (court stated that if internal affairs officer's comments were made in good faith, then the state's interest in preventing perjury and corruption within municipal law enforcement departments outweighed the interest in departmental efficiency and harmony); but see Johnson v. Louisiana, 369 F.3d 826, 831-32 (5th Cir. 2004) (Wilson's holding that good faith allegations of sexual harassment tip the balancing of interests in favor of the employee is modified by Waters v. Churchill, 511 U.S. 661, 114 S. Ct. 1878, 128 L. Ed. 2d 686 (1994), insofar as disputes as to the content of an employee's speech are resolved in favor of the employer, if the employer conducted a reasonable investigation as to the content of the speech.).

The Court is hesitant to place too much emphasis on these cases. Putting the truth/falsity

11

2. *Causation Analysis*

"First Amendment retaliation claims are governed by the Mt. Healthy 'mixed-motives' framework." Gonzalez v. Dallas County, 249 F.3d 406, 412 n. 6 (5th Cir. 2001); Charles, 522 F.3d at 516 n. 28; see Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977). Once an employee has met his burden of showing that his protected conduct was a substantial factor or motivating factor in the employer's adverse employment action, the burden shifts to the employer to show, by a preponderance of the evidence, that it would have taken the same adverse action even in the absence of the speech. Charles, 522 F.3d at 516 n. 28; Jordan, 516 F.3d at 301. If the employer makes this showing, then there is no constitutional violation. Charles, 522 F.3d at 516 n. 28.

A Plaintiff pursuing a First Amendment retaliation claim may rely upon a chronology of events from which retaliation may plausibly be inferred. Brady v. Houston Indep. Sch. Dist., 113 F.3d 1419, 1424 (5th Cir. 1997). However, the length of time between the speech and the adverse action is only probative of causation, not determinative. Jordan, 516 F.3d at 300-01. A plaintiff's own belief that the speech was a substantial or motivating factor is, by itself, insufficient to meet the standard required for the retaliation claim to survive a motion for summary judgment. Whiting v. Univ. of S. Miss., 451 F.3d 339, 351 (5th Cir. 2006).

The City argues that Chief Chaffin did not remove the Plaintiff from internal affairs because of his speech, but, rather, because he had lost his objectivity, a necessary trait for an internal affairs

---

of the misconduct allegation or the employee's good faith into issue would drastically expand the scope of the evidence necessary at trial, particularly in cases such as the present one, in which the allegation's truth or falsity can only be measured by comparison of one event (how TPD handled the Robert Hall matter) with an indefinite number of other events (how TPD handled similar matters involving white officers).

investigator. The City also argues that Chief Chaffin's subsequent transfer of the Plaintiff to the Apartment/Housing Authority Patrol was due to Plaintiff's prior experience as a liaison between the Department and the city's landlords.

Both the Plaintiff and Chief Chaffin testified that loss of objectivity was the reason that Chaffin gave for removing the Plaintiff from internal affairs. However, the Chief stated in his affidavit, "Hardy's comments at the public meeting on October 12... confirmed for me that he had lost objectivity." In other words, the Chief admitted that his assessment of the Plaintiff's objectivity was based in part on the Plaintiff's speech. The Plaintiff also points out that he was removed from internal affairs less than a month after he spoke at the community meeting.

Viewing the facts in the light most favorable to the Plaintiff, the Court can not conclude that the Defendant has shown that it would have taken the same actions in the absence of the Plaintiff's speech. The primary factor in this decision is the Chief's admission that the Plaintiff's speech was, to some degree, a motivating factor in his decision that the Plaintiff had lost objectivity and should therefore be removed from internal affairs. When the Chief's testimony is combined with the temporal proximity of the action taken to the speech at issue, there is sufficient evidence for the Plaintiff to survive the Defendant's Motion for Summary Judgment on this issue.

**B.      Title VII Claim**

A plaintiff may prove a retaliation claim under Title VII by either direct or circumstantial evidence. McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007); McCullough v. Houston County, 297 Fed. Appx. 282, 288 (5th Cir. 2008). To establish a prima facie case of retaliation, a plaintiff must establish that "(1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists

between the protected activity and the adverse employment action." McCoy, 492 F.3d at 556-57.[6] In its Motion for Summary Judgment, the Defendant argues that summary judgment in its favor is appropriate based on two of the above elements.

*1. Whether the Activity is Protected by Title VII*

The Defendant argues that the Plaintiff has not met his initial burden because the activities he engaged in were not protected by Title VII. The Plaintiff gave a public statement at a community meeting in opposition to what he believes was the racially-motivated investigation, prosecution, and demotion of former Deputy Chief Robert Hall. Title VII makes it unlawful for an employer to "discriminate against any individual... because he has opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e-3(a) (2009). Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1) (2009). Therefore, the Plaintiff's activity clearly falls under the literal wording of Title VII.

"Not all activities taken in opposition to an employer's perceived discriminatory practices, however, remain insulated from reprisal under Title VII's shield." Douglas v. DynMcDermott Petroleum Operations Co., 144 F.3d 364, 373 (5th Cir. 1998) (citing Smith v. Tex. Dep't of Water Res., 818 F.2d 363, 365-66 (5th Cir. 1987); Jones v. Flagship Int'l, 793 F.2d 714, 727 (5th Cir. 1986)). Although some conduct is undertaken with sincere intentions, it may be so inappropriate

---

[6]The Mt. Healthy "mixed motives" framework is only used when a retaliation claim is founded upon the violation of Constitutional rights. Sherrod v. Am. Airlines, 132 F.3d 1112, 1121-22 (5th Cir. 1998); N. Miss. Commc'ns, Inc. v. Jones, 874 F.2d 1064, 1068 (5th Cir. 1989). The McDonnell Douglas "burden-shifting" framework provides the causation analysis for retaliation claims brought under Title VII. Long v. Eastfield College, 88 F.3d 300, 304 (5th Cir. 1996); Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir. 2005).

that it receives no protection under Title VII. Douglas, 144 F.3d at 373; Payne v. McLemore's Wholesale & Retail Stores, 654 F.2d 1130, 1142 (5th Cir. 1981) ("illegal acts of opposition," "unreasonably hostile or aggressive conduct" may place employee activities outside the protection of Title VII). The Fifth Circuit Court of Appeals has stated:

> [T]here may arise instances where the employee's conduct in protest of an unlawful employment practice so interferes with the performance of his job that it renders him ineffective in the position for which he was employed. In such a case, his conduct, or form of opposition, is not covered by [Title VII].

Douglas, 144 F.3d at 374; see also Payne, 654 F.2d at 1142; Jones, 793 F.2d at 728; Smith, 818 F.2d at 366; Rosser v. Laborers' Int'l Union, 616 F.2d 221, 224 (5th Cir.), cert. denied, 449 U.S. 886, 101 S. Ct. 241, 66 L. Ed. 2d 112 (1980). Title VII "was not meant to immunize insubordinate, disruptive, or nonproductive behavior at work." Smith, 818 F.2d at 366.[7]

The Court employs a balancing test to determine whether Title VII protects the particular activities engaged in by the employee. Douglas, 144 F.3d at 373. "The employer's right to run his business must be balanced against the rights of the employee to express his grievances and promote his own welfare." Id. at 373-74. If the "conduct in protest of an unlawful employment practice so interfere[d] with the performance of his job that it render[ed] him ineffective in the position for which he was employed," then the activity is unprotected. Douglas, 144 F.3d at 374. When evaluating the employee's conduct, the Court is to measure it by the "flexible and protean doctrine

---

[7]See Douglas, 144 F.3d at 374-75 (attorney's breach of confidentiality and violation of ethical rules was unprotected under Title VII); Jones, 793 F.2d at 728 (attorney encouraging and discrimination claim against her employer and coordinating a class action suit against her employer were unprotected under Title VII); Jefferies v. Harris County Cmty. Action Ass'n, 615 F.2d 1025, 1036-37 (5th Cir. 1980) (secretary at government agency copying and disseminating confidential personnel records and agency documents was unprotected under Title VII); Smith, 818 F.2d at 366 (secretary refusing to perform a job assignment that, while unpalatable to her, was not immoral, dangerous, or degrading, was unprotected under Title VII).

15

of reasonableness in the light of the circumstances." Id. at 374 (citation omitted); see also Jones, 793 F.2d at 728; Payne, 654 F.2d at 1145-46; Jefferies, 615 F.2d at 1036; Smith, 818 F.2d at 366. In a case arising under the opposition clause of Title VII, a plaintiff must only show that he had an objectively "reasonable belief that the employer was engaged in unlawful employment practices" in order to establish that he was engaged in a protected activity. Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 348 (5th Cir. 2007); Parker v. State of La. Dep't of Educ.Special Sch. Dist., 2009 U.S. App. LEXIS 8632, *19 (5th Cir. Apr. 23, 2009); Allen v. Admin. Review Bd., 514 F.3d 468, 477 (5th Cir. 2008).[8] If the Court can not conclude that, as a matter of law, the opposition activity is outside the protection of Title VII, "the fact finder must have an opportunity to hear evidence, to balance the competing considerations, and to reach a conclusion as to the reasonableness of the conduct." Payne, 654 F.2d at 1145-46.

The Court can not hold that the opposition activity in the present case - the Plaintiff's statement at the October 12, 2006, community meeting - is unprotected as a matter of law. First, there is little evidence of actual disruption to the Plaintiff's ability to perform his job duties. The only evidence relating to disruption is the Plaintiff's belief that other officers would not back him

---

[8]The Court notes that some opinions by the Fifth Circuit Court of Appeals state that "a plaintiff may establish a prima facie case of retaliatory discharge under the opposition clause of [Title VII] by showing that he had a reasonable belief that the employer was engaged in unlawful employment practices," without any mention of adverse employment action or causation. Payne, 654 F.2d at 1140-41; Parker, 2009 U.S. App. LEXIS 8632 at *19. The "reasonable belief" rule, however, is incorporated into the three-pronged Title VII retaliation framework by allowing the plaintiff to satisfy his burden as to whether the activity he engaged in was protected by showing that he had a reasonable belief that the employer's employment practice was unlawful. Tureaud v. Grambling State Univ., 294 Fed. Appx. 909, 914 (5th Cir. 2008); Baker v. Am. Airlines, Inc., 430 F.3d 750, 754-55 (5th Cir. 2005). So, in addition to the reasonable belief that an employer was engaged in unlawful employment practices, a plaintiff in a case arising under the opposition clause must also show an adverse employment action and causation.

16

up and the belief of other officers, including the Chief, that the Plaintiff would not conduct impartial internal affairs investigations. The evidence does not establish as a matter of law that his "conduct in protest of an unlawful employment practice so interfere[d] with the performance of his job that it render[ed] him ineffective in the position for which he was employed," unless mere suspicion and speculation on the part of other officers would keep him from doing his job. See Douglas, 144 F.3d at 374.

Furthermore, the cases addressing this issue stress that the standard by which the Court must measure the Plaintiff's conduct is "reasonableness in light of the circumstances." See Douglas, 144 F.3d at 374; Jones, 793 F.2d at 728; Payne, 654 F.2d at 1145-46; Jefferies, 615 F.2d at 1036; Smith, 818 F.2d at 366. If the Plaintiff had an objectively reasonable belief that the employer's behavior was in violation of Title VII, then the opposition activity was protected. Turner, 476 F.3d at 348; Parker, 2009 U.S. App. LEXIS 8632 at *19. The evidence currently before the Court is insufficient to establish that his belief that the Department was engaged in behavior in violation of Title VII was unreasonable as a matter of law. Therefore, summary judgment on this issue would be inappropriate, and "the fact finder must have an opportunity to hear evidence, to balance the competing considerations, and to reach a conclusion as to the reasonableness of the conduct" and the reasonableness of Plaintiff's belief that the Department was engaged in unlawful behavior. Payne, 654 F.2d at 1145-46.

   2.   *Causation*

If a plaintiff makes the prima facie showing, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action." McCoy, 492 F.3d at 557. "The employer's burden is only one of production, not persuasion, and involves no

17

credibility assessment." Id. If the employer produces a legitimate reason for the action taken, "any presumption of discrimination raised by the plaintiff's prima facie case vanishes." McCullough, 297 Fed. Appx. at 288 (citing Septimus, 399 F.3d at 609).

The burden then shifts back to the plaintiff to prove that "the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose. To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." McCoy, 492 F.3d at 557. At the pretext stage, the plaintiff must show that "the adverse employment action taken against the plaintiff would not have occurred 'but for' [the] protected conduct." McCullough, 297 Fed. Appx. at 288 (citing Septimus, 399 F.3d at 608)). The Fifth Circuit Court of Appeals has expressly stated that temporal proximity alone is not sufficient to establish "but for" causation in this final stage. McCullough, 297 Fed. Appx. at 288-89 (citing Strong v. Univ. Healthcare Sys., 482 F.3d 802, 808 (5th Cir. 2007)).

The Plaintiff's allegations are sufficient to make a prima facie case of retaliation under Title VII. However, the Defendant responds that the Plaintiff's opposition activity was not the reason for the employment action; rather, the Defendant argues that the Plaintiff's loss of objectivity was the reason for his removal from internal affairs and that his prior experience working with landlords in Tupelo was the reason for his assignment to the Tupelo Apartment/Housing Authority Patrol. Assuming, without deciding, that these are legitimate reasons for the employment action taken, the burden would then shift back to the Plaintiff to show that the employment action would not have occurred but for his opposition activity.

The Chief testified that the Plaintiff's public statements confirmed that he had lost his objectivity and that he should be removed from internal affairs. Therefore, viewing the facts in the

light most favorable to the Plaintiff, the Court concludes that a genuine issue of material fact remains as to whether the employment action was caused by the Plaintiff's opposition activity.

## IV. Conclusion

For the reasons stated above, the Defendant's Motion for Summary Judgment is **DENIED** as to the Plaintiff's First Amendment and Title VII claims. A separate order consistent with this opinion shall issue on this the 26th day of June, 2009.

**/s/ Sharion Aycock**
**UNITED STATES DISTRICT JUDGE**