IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

CLIFF HARDY                                                                                            PLAINTIFF

V.                                                         CIVIL ACTION NO. 1:08-CV-28-SA-JAD

CITY OF TUPELO, MISSISSIPPI                                                         DEFENDANT

## MEMORANDUM OPINION

Several issues remain before the Court with respect to this case.[1] First, the Court makes a final determination regarding Defendant's Motion for Remittitur of the jury's back pay award. Second, the Court addresses Plaintiff's Motion for Leave to Substitute a Request for Reinstatement in Lieu of Front Pay [131]. Third, the Court addresses Plaintiff's Motion for Back Pay Until Date of Court's Ruling on Post-Trial Motions and for Front Pay [116], and, finally, the Court addresses Plaintiff's Motion for Attorney Fees [136].

For the reasons stated below, the Court (1) remits the back pay awarded to Plaintiff by an additional $27,268.56; (2) denies Plaintiff's Motion for Leave to Substitute a Request for Reinstatement in Lieu of Front Pay [131]; (3) grants Plaintiff's Motion for Back Pay Until Date of Court's Ruling on Post-Trial Motions [116]; (4) grants Plaintiff's Motion for Front Pay; and (5) grants in part Plaintiff's Motion for Attorney Fees [136].

## I. REMITTITUR

On July 24, 2009, the jury returned a verdict in favor of Plaintiff as to both his First Amendment and Title VII retaliation claims. The jury also found that Plaintiff had been

---

[1]The Court has recounted the factual and procedural background of this case at length in previous opinions. See Hardy v. City of Tupelo, 2009 U.S. Dist. LEXIS 103762 (N.D. Miss. Nov. 2, 2009) (opinion on post-trial motions); Hardy v. City of Tupelo, 2009 U.S. Dist. LEXIS 55836 (N.D. Miss. June 26, 2009) (opinion on motion for summary judgment).

constructively discharged and awarded $100,000.00 in back pay. On August 7, 2009, Defendant filed its Motion for Remittitur. Defendant argued that the back pay award should be remitted to $47,500.00 - reduced by retirement benefits that Plaintiff received and other income earned since his resignation.

The Court held that the evidence presented at trial as to Plaintiff's annual income before resignation and the income he earned since resignation required that the jury's back pay award be reduced to at least $85,415.64. Hardy, 2009 U.S. Dist. LEXIS 103762 at *54. The Court also held that the jury's back pay award would be further remitted in an amount equal to the portion of retirement funds paid to Plaintiff that were attributable to contributions by Defendant. Id. at *58.

The Court's decision on this issue was guided by the Fifth Circuit Court of Appeals decision in Lubke v. City of Arlington, 455 F.3d 489, 499 (5th Cir. 2006). Upon remand of that case, the United States District Court for the Northern District of Texas explained the Fifth Circuit's rationale:

> The Fifth Circuit instructs that any award for Lubke's lost wages and benefits must be reduced by the amounts Lubke received during the damages period under his pension and 401(k) plans that are attributable to Arlington's payments to those plans while he was employed. This is so because, by being awarded all of the wages he would have earned and all of the benefits he would have accrued during the damages period, Lubke is made whole. If he is also allowed to retain benefits paid to him as a retiree during the damages period, he is made more than whole. In other words, Lubke cannot receive the wages and benefits of employment and, at the same time, receive the benefits of retirement. Thus, Lubke must cough up, as an offset against his award, the retirement benefits he received during the damages period that are attributable to Arlington's contributions.

Reed v. City of Arlington, 2008 U.S. Dist. LEXIS 60618, *5-*6 (N.D. Tex. Aug. 8, 2008). At the time of its earlier ruling, the Court did not have sufficient information to determine the amount of the retirement benefits attributable to Defendant's contributions. Id. at *59-*60. Therefore, the Court ordered the parties to provide briefs on the issue supported by proper documentation. Id.

"Back pay is an equitable remedy that is within the sound discretion of the district court." Manuel v. Tex. State Tech. College, 294 Fed. Appx. 852, 854 (5th Cir. 2008) (citing Sellers v. Delgado College, 902 F.2d 1189, 1193 (5th Cir. 1990)). "Although the district court should defer to the jury's findings, the court abuses its discretion when it enters a judgment on a verdict unsupported by evidence." Vaughn v. Sabine County, 104 Fed. Appx. 980, 985 (5th Cir. 2004). "A verdict is excessive as a matter of law if shown to exceed 'any rational appraisal or estimate of the damages that could be based upon the evidence before the jury.'" Brunneman v. Terra Int'l, Inc., 975 F.2d 175, 178 (5th Cir. 1992) (quoting Kolb v. Goldring, Inc., 694 F.2d 869, 871 (1st Cir. 1982)). There is no dispute that Plaintiff received retirement benefits. Likewise, there is no dispute that Defendant contributed to these retirement benefits. The evidence presented at trial is sufficient to establish that much. Therefore, the Court must further remit Plaintiff's back pay award in accordance with Lubke.

The Court previously remitted the jury's back pay award to $85,415.64. After reviewing the figures submitted by the parties, the Court further remits the jury's back pay award by an additional $27,268.56, resulting in an award of $58,147.08.[2]

---

[2]The Court recognizes that this figure and the methodology utilized in calculating it are not exact. For example, Defendant failed to provide any documentary evidence or legal citation supporting the employer and employee contribution percentages employed in reaching its time-weighted calculation. Further, Defendant included the employer and employee contribution percentages for the period of time after Plaintiff's retirement in the time-weighted calculation, and the Court questions whether a public employer continues to contribute to an employee's retirement fund after the employee has retired. However, back pay awards are not required to be exact or certain. Lowe v. Southmark Corp., 998 F.2d 335, 337 (5th Cir. 1993). In arriving at this decision, the Court was forced to take the limited evidence provided by the parties - despite the Court's specific order to further brief these issues and provide supporting documentation - and exercise its discretion in arriving at an equitable outcome. Manuel, 294 Fed. Appx. at 854 (back pay is an equitable remedy within the discretion of the trial court).

## II. REINSTATEMENT

After the jury returned a verdict in his favor, Plaintiff requested front pay, asserting that "[r]einstatement would be wholly ineffective and impracticable in this case." He argued that the evidence produced at trial "established that there exists significant discord and antagonism between [him] and some ranking members of the Tupelo Police Department." However, Plaintiff later filed his Motion for Leave to Substitute a Request for Reinstatement in Lieu of Front Pay, stating that changes to the management of the Department have alleviated his concerns with respect to reinstatement.

Reinstatement is the preferred equitable remedy in discriminatory discharge cases. Rutherford v. Harris County, 197 F.3d 173, 188 (5th Cir. 1999) (citing Woodhouse v. Magnolia Hosp., 92 F.3d 248, 257 (5th Cir. 1996)). However, if reinstatement is not feasible, the Court may award front pay. Id. If the Court declines to reinstate a wrongfully discharged plaintiff, it must "adequately articulate its reasons for finding reinstatement to be infeasible." Id.

Reinstatement may be denied in situations where it would be "ineffective as a make-whole remedy." Goldstein v. Manhattan Indus., Inc., 758 F.2d 1435, 1449 (5th Cir. 1985). The feasibility of reinstatement can not be determined by reference to a single factor. Rather, the Court has the discretion to examine the particular circumstances of a case and determine whether reinstatement would be an effective remedy. Palasota v. Haggar Clothing Co., 499 F.3d 474, 489 (5th Cir. 2007) (court considers a number of factors, including whether the position still exists, whether another employee would have to be displaced, whether plaintiff has changed careers, and whether animosity exists among the parties); Ray v. Iuka Special Mun. Sch. Dist., 51 F.3d 1246, 1254-55 (5th Cir. 1995) (district court did not abuse its discretion by denying reinstatement based on concern for

predictability in the personnel decisions of the employer); Deloach v. Delchamps, Inc., 897 F.2d 815, 822 (5th Cir. 1990) (district court did not abuse its discretion when it denied reinstatement because it would cause morale problems and plaintiff had been already replaced). In making its determination, the Court is entitled to rely on the parties' statements in the pleadings and the evidence offered at trial. Brunnemann v. Terra Int'l, Inc., 975 F.2d 175, 180 (5th Cir. 1992).

Defendant argues that Plaintiff has waived or abandoned the issue of reinstatement by not including such a request in the pretrial order. This Court has previously denied a request for reinstatement based in part on the parties' failure to include the issue in the pretrial order. Hardin v. Caterpillar, Inc., 1999 U.S. Dist. LEXIS 8041, *5-*6 (N.D. Miss. May 27, 1999), *vacated in part*, Hardin v. Caterpillar, Inc., 227 F.3d 268, 269 (5th Cir. 2000) (affirming decision to not award reinstatement because of failure to list remedy on pretrial order). Similarly, the Fifth Circuit Court of Appeals has ruled that a party's request for a particular remedy was waived because that particular form of relief was not mentioned in the pretrial order. Elvis Presley Enters. v. Capece, 141 F.3d 188, 206 (5th Cir. 1998); see also Morales v Turman, 535 F.2d 864, 867 n. 7 (5th Cir. 1976) (pretrial order may be relied upon as an indicator of the nature of the relief sought).

The contested issues of fact and law listed in the pretrial order [105] clearly encompass issues relevant to requests for back pay and emotional damages. However, the pretrial order contains no reference to reinstatement or issues of law or fact particular to reinstatement. Leading up to and throughout the trial of this matter, Plaintiff claimed that he feared that officers within the Department would intentionally place his life in danger or otherwise retaliate against him. These claims were a key component of his constructive discharge claim and of his request for emotional damages. In light of Plaintiff's repeated assertions of fear of retaliation, his explicit request for front

pay, and his failure to include the issue of reinstatement in the pretrial order, the Court holds that Plaintiff has waived the remedy of reinstatement. Therefore, the Court denies Plaintiff's request to withdraw his request for front pay and substitute a request for reinstatement.

### III. POST-VERDICT BACK PAY

On August 7, 2009, Plaintiff filed a motion requesting that the Court amend the jury's judgment to award back pay from the date of the jury verdict until the disposition of all post-trial motions. Defendant does not dispute Plaintiff's argument that a prevailing plaintiff is entitled to back pay from the date of the jury verdict until the Court resolves post-trial motions. Rather, Defendant argues that any additional back pay damage awarded to Plaintiff be limited in accordance with the argument made in Defendant's Motion for Remittitur with respect to Plaintiff's retirement benefits. However, despite the fact that the Court gave the parties the opportunity to further brief this issue,[3] Defendant did not provide the Court with sufficient information to apply the "employer contribution" principle of Lubke to any award of post-verdict back pay. For example, unless the Court is to assume that Plaintiff's monthly retirement allowance has remained the same throughout the period of time since trial, it does not know how much Plaintiff has received in retirement benefits. Further, Defendant has not provided the Court with a time-weighted figure based on retirement contributions as it did with respect to the jury's back pay award.

"'Back pay' commonly refers to the wages and other benefits that an employee would have earned if the unlawful event that affected the employee's job related compensation had not occurred." Rutherford, 197 F.3d at 191. Back pay generally accrues from the date of the adverse

---

[3]Hardy, 2009 U.S. Dist. LEXIS 103762 at *59 (". . . to what extent, if any, should any award of back pay through the date of final judgment be reduced, in light of the Court's holding above, if the Court grants Plaintiff's Motion for Back through the date of final judgment?").

employment action to the date of the judgment. Id. The Fifth Circuit Court of Appeals has clarified that the date of judgment is the date on which "damages are settled." Palasota, 499 F.3d at 483; see also Boddie v. City of Columbus, 989 F.2d 745, 752 (5th Cir. 1993) (where plaintiff was only compensated for his loss of income up until trial, Court remanded with instructions to further compensate for period of time between the end of trial and ruling on post-trial motions).

The Court has already remitted the jury's award of $100,000.00 in back pay damages to the maximum amount they could have awarded him based on the evidence presented at trial: $58,147.08. Plaintiff is entitled to an additional $23,841.67[4] in back pay damages to compensate him for the time that has passed since the conclusion of the trial.[5] Therefore, the Court further amends the jury's verdict and awards Plaintiff $81,988.75 in back pay.[6]

## IV. FRONT PAY

Front pay - like back pay - is meant to "compensate the plaintiff for wages and benefits he would have received from the defendant employer in the future if not for the discrimination." Palasota, 499 F.3d at 490 (quoting Tyler v. Union Oil Co., 304 F.3d 379, 402 (5th Cir. 2002)). However, "front pay is a prospective remedy that estimates the damage the plaintiff will continue to suffer after the date of final judgment as a result of the wrongdoing." Id. at 490-91. If reinstatement is not feasible, the court should award the alternative remedy of front pay. Ray, 51 F.3d at 1253. Front pay is an equitable remedy, and the amount of an award, if any, is within the court's discretion. Webster, 114 Fed. Appx. at 604-05; Reneau v. Wayne Griffin & Sons, Inc., 945

---

[4]($40,288.00) (216/365) = $23,841.67

[5]The parties' briefing on Plaintiff's motion for additional back pay contains no evidence of sums earned by Plaintiff between the date of the jury's verdict and the date of this opinion.

[6]$58,147.08 + $23,841.67 = $81,988.75

7

F.2d 869, 870 (5th Cir. 1991).

"Calculations of front pay cannot be totally accurate because they are prospective and necessarily speculative in nature." Reneau, 945 F.2d at 870. There is not "any one factor or group of factors" that the court must consider when calculating a front pay award. Webster, 114 Fed. Appx. at 605. The court may consider factors such as:

> the length of prior employment, the permanency of the position held, the nature of work, the age and physical condition of the employee, possible consolidation of jobs and the myriad other non-discriminatory factors which could validly affect the possible . . . post-discharge employment relationship.

Reneau, 945 F.2d at 871. Front pay awards must be "carefully crafted to avoid a windfall to the plaintiff," as damages for employment discrimination are not meant to be punitive. Palasota, 499 F.3d at 491.

Defendant argues that front pay is inappropriate in this case because of the substantial emotional damage award. The Fifth Circuit Court of Appeals has held that an award of front pay may be inappropriate or excessive in cases where a plaintiff receives a substantial liquidated or punitive damage award. Hadley v. VAM P T S, 44 F.3d 372, 376 (5th Cir. 1995). The reasoning behind this principle is that "receipt of 'a substantial liquidated damage award further strengthens the court's judgment that [the plaintiff] has already been made whole.'" Palasota, 499 F.3d at 491 (quoting Hybert v. Hearst Corp., 900 F.2d 1050, 1056 (7th Cir. 1990)). "[T]he size of the liquidated damages award is only an indicator of the propriety of front pay, not a bright line rule." Id. (citing Shattuck v. Kinetic Concepts Inc., 49 F.3d 1106, 1110 (5th Cir. 1995)). However, while the Fifth Circuit has explicitly stated that substantial liquidated and punitive damage awards may be an indicator that front pay is not appropriate, the Court is not aware of precedent applying similar reasoning to substantial compensatory damage awards. Defendant has not directed the Court toward

8

such precedent, and in its absence, the Court declines to extend the Fifth Circuit's reasoning in the manner Defendant suggests.

Defendant also argues that Plaintiff is not entitled to a front pay award because he has failed to mitigate his damages by seeking comparable employment. "Front pay may be denied or reduced when the employee fails to mitigate damages by seeking other employment." Reneau, 945 F.2d at 870. A plaintiff must exercise "reasonable diligence to obtain *substantially equivalent employment*, not any other employment." Sellers v. Delgado College, 902 F.2d 1189, 1194 (5th Cir. 1990). The Fifth Circuit Court of Appeals has observed:

> The reasonableness of a Title VII claimant's diligence should be evaluated in light of the individual characteristics of the claimant and the job market. Substantially equivalent employment is that employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the Title VII claimant has been discriminatorily discharged.

Id. at 1193 (internal quotations and citations omitted).

The "employer has the burden of proving failure to mitigate." Id.; Palasota, 499 F.3d at 486. An employer can meet its burden in two ways. First, the employer can prove that "substantially equivalent work was available and that the former employee did not exercise reasonable diligence to obtain it." West v. Nabors Drilling USA, Inc., 330 F.3d 379, 393 (5th Cir. 2003) (quoting Sellers, 902 F.2d at 1193). Alternatively, an employer may meet its burden by proving "that an employee has not made reasonable efforts to obtain work." Id. When analyzing a failure to mitigate argument in the context of front pay, the Fifth Circuit has considered the plaintiff's mitigation efforts during the back pay period. Sellers, 902 F.2d at 1196 (because plaintiff did not exercise reasonable diligence to obtain substantially equivalent employment during the back pay period, front pay denial was appropriate).

According to the evidence in the record, Plaintiff attempted to start a security company during the first year of his retirement, but the venture has not been successful due to differences of opinion among the company's partners. Plaintiff also briefly obtained a part-time job as a shuttle driver for a mental health care provider, but he was not able to meet the physical examination requirements. Finally, Plaintiff worked as a cab driver for a period of time before trial, but he lost the job for reasons not reflected in the record. Plaintiff testified that he did not seek work for a period of time after losing the cab driver job. In addition to all the preceding attempts at maintaining employment, Plaintiff started a small farming operation, which had not turned a profit as of the trial of this matter.

The record also shows that Plaintiff sought other employment by various means before trial. He registered with the Mississippi Department of Employment Security and attempted to obtain job interviews through that service. He also monitored employment opportunities listed with North Mississippi Health Services and in the Northeast Mississippi Daily Journal, but he found no openings for which he is qualified. Plaintiff attempted to apply for employment with a private security company and a private delivery company, but neither effort yielded results. Finally, Plaintiff submitted an application to a temporary staffing agency, and he sought a position as a 911 dispatcher.

Since the trial of this matter, Plaintiff continues to operate his small farming business, which still operates at a loss. However, the Court notes that Plaintiff testified at trial that he believed it would eventually turn a profit. Plaintiff has also continued to check job postings in the Mississippi Department of Employment Security Job Bank, in the Northeast Mississippi Daily Journal, and with North Mississippi Health Services. Plaintiff has also been in regular contact with a private security

firm in an attempt to obtain a supervisory position.

In light of the above facts, the Court finds that Plaintiff has made reasonable efforts to obtain substantially equivalent work. Defendant has not offered evidence suggesting that the sources Plaintiff checked for job postings are not reasonable resources to consult when seeking law enforcement employment opportunities. The Fifth Circuit has held that a plaintiff may sufficiently mitigate his damages by "seeking and accepting the best employment [he can] find, even though law enforcement opportunities [are] not available." Vaughn, 104 Fed. Appx. at 985. The facts in the record indicate that such is the case here.

Plaintiff has requested a minimum front pay award of $27,966.00. Plaintiff was employed by the Tupelo Police Department for approximately twenty years. The Court can not identify - nor has Defendant identified - evidence in the record suggesting that Plaintiff's position was impermanent in nature, that Plaintiff's age and health would have prevented his continued employment, or that any other nondiscriminatory factor would have affected the employment relationship that could have existed between Plaintiff and Defendant, if not for the constructive discharge. See Downey v. Strain, 510 F.3d 534, 544 (5th Cir. 2007) (citing Reneau, 945 F.2d at 871). In the final full calendar year of his employment with the Department, Plaintiff received $40,288.00 in wages. Therefore, in this Court's opinion, $27,966.00 is an appropriate amount of front pay in the present case. Accordingly, Plaintiff's Motion for Front Pay is granted.

## V. ATTORNEY'S FEES

The court, in its discretion, may award a reasonable attorney's fee to the prevailing party in a Title VII retaliation case. 42 U.S.C. § 2000e-5(k). "[A] prevailing *plaintiff* ordinarily is to be awarded attorney's fees in all but special circumstances." Tureaud v. Grambling State Univ., 294

Fed. Appx. 909, 917 (5th Cir. 2008). Likewise, the prevailing party in a First Amendment retaliation case is entitled to a reasonable attorney's fee. 42 U.S.C. § 1988(b).

"To calculate attorneys' fees, a court must first calculate a lodestar fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." Green v. Adm'rs of the Tulane Educ. Fund, 284 F.3d 642, 661 (5th Cir. 2002). Plaintiff has submitted records which show the following figures: 272.30 hours by attorney Jim Waide; 41.10 hours by attorney Ron Woodruff; 128.90 hours by attorney Shane McLaughlin; 162.60 hours by paralegals; and 10.50 hours of travel time by attorney Jim Waide. Defendant does not dispute the number of hours submitted by Plaintiff, and the Court agrees that the amount of time expended is reasonable. However, Defendant challenges the reasonableness of the hourly rates requested by Plaintiff.

First, Defendant's lodestar calculations assume an hourly rate of $200.00 per hour for time expended by Mr. Waide, while Plaintiff requested an hourly rate of $265.00 per hour for time expended by Mr. Waide. "[R]easonable hourly rates are determined by looking to the prevailing market rates in the relevant legal community." Green, 284 F.3d at 662. Defendant offered no evidence in support of its implicit argument that the appropriate hourly rate to be applied to Mr. Waide's time is $200.00 per hour. In contrast, Plaintiff offered affidavits from two local practitioners attesting to the reasonableness of a $265.00 hourly rate. Therefore, the Court approves an hourly rate of $265.00 per hour for time expended by Mr. Waide.

Defendant also argues that some of the work performed by Plaintiff's counsel should be billed at a paralegal's rate. It is appropriate for the court to distinguish between legal work and work which can be accomplished by non-lawyers. Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717 (5th Cir. 1974). The court may compensate hours claimed for such clerical work at a lower rate.

12

Cruz v. Hauck, 762 F.2d 1230, 1235 (5th Cir. 1985). Examples of such work include investigation, compilation of facts and statistics, communications which serve a purely logistical or organizational purpose, the filing of returns with the court, the service of documents, and the preparation of notices and cover letters.[7] Examples of work that may be billed at an attorney's rate are legal research, writing, court appearances, conferences, telephone calls, and other correspondence. Shirley, 763 F. Supp. at 858.

Upon examination of the records submitted by Plaintiff, the Court finds several tasks which should be billed at a paralegal rate. In some cases, the tasks are listed as a single entry with tasks which may be billed at an attorney's rate. In those cases, the Court has examined the remainder of the entries, found the typical amount of time spent on the paralegal task, and adjusted the time billed accordingly. The following entries should be billed at a lower rate:

| **Attorney** | **Date** | **Task** | **Time** |
| --- | --- | --- | --- |
| Waide | 9/19/08 | Prepared and sent Notice of Deposition of individuals | 0.10 |
| Waide | 9/29/08 | Prepared and sent Subpoena Duces Tecum upon Nettie Davis | 0.20 |
| Waide | 12/15/08 | Prepared and sent Notice of Deposition | 0.10 |
| Waide | 12/31/08 | Prepared and sent Notice of Deposition | 0.20 |

---

[7]Walker v. United States HUD, 99 F.3d 761, 771 (5th Cir. 1996) (investigation, compilation of facts and statistics); Minter-Smith v. Mukasey, 2008 U.S. Dist. LEXIS 41313, *34-*35 (S.D. Miss. May 22, 2008) (correspondence, emails, and phone calls which served purely logistical purposes were clerical in nature); Baker v. Wash. Mut. Fin. Group, LLC, 2007 U.S. Dist. LEXIS 68057, *9-*10 (S.D. Miss. Sept. 13, 2007) (drafting letters to accompany motions for filing, review of lists); Lopez v. City of Biloxi, 2006 U.S. Dist. LEXIS 28518, *5 (S.D. Miss. May 3, 2006) (filing of return with Court); Herdahl v. Pontotoc County Sch. Dist., 964 F. Supp. 1113, 1117 (N.D. Miss. 1997) (service of documents); Shirley v. Chrysler First, Inc., 763 F. Supp. 856, 858 n. 3 (N.D. Miss. 1991) (preparation of notices and cover letters, simple scheduling matters).

| Waide | 1/21/09 | Prepared and sent Notice of Deposition | 0.10 |
|---|---|---|---|
| Waide | 2/5/09 | Prepared and sent Notice of Deposition | 0.20 |
| McLaughlin | 7/1/09 | Drafting and filing Notice of Entry of Appearance | 0.10 |
| McLaughlin | 7/6/09 | Work on preparation of Trial Notebooks and Exhibit Notebooks | 2.0 |
| McLaughlin | 7/13/09 | Continued work on trial exhibit notebooks[8] | 3.8 |

After adjusting the figures accordingly, the court arrives at the following totals: 271.40 hours at attorney Jim Waide's rate; 41.10 hours at attorney Ron Woodruff's rate; 123.00 hours at attorney Shane McLaughlin's rate; 169.40 hours at the paralegal rate; and 10.50 hours at attorney Jim Waide's travel rate. Defendant offers no further arguments concerning the reasonableness of the rates requested by Plaintiff, and the Court finds the rates reasonable. Therefore, the Court's lodestar figure is $111,985.00.[9]

After arriving at a lodestar, the court considers a number of factors to determine whether the lodestar should be adjusted upward or downward. Green, 284 F.3d at 661 (citing Johnson, 488 F.2d 714). The Johnson factors are: (1) the time and labor required to litigate the matter; (2) the novelty and complexity of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether

---

[8]Plaintiff's counsel did not specify in his itemization the specific amount of time spent on preparation of trial notebooks and exhibit notebooks on July 6, 2009, and July 13, 2009. Therefore, the Court has exercised its discretion and determined an appropriate amount of time from each entry to be billed at the paralegal rate.

[9]($265.00 / 1 hour)(271.40 hours) + ($150.00 / 1 hour)(41.10 hours) + ($150.00 / 1 hour)(123.00 hours) + ($85.00 / 1 hour)(169.40 hours) + ($100.00 / 1 hour)(10.50 hours) = $111,985.00

14

the fee is fixed or contingent; (7) whether the client or case imposed time constraints; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) whether the case was "undesirable;" (11) the type of attorney-client relationship and whether the relationship was longstanding; and (12) awards made in similar cases. Id.

Defendant's primary argument in response to Plaintiff's fee request stems from one of the above factors: the degree of Plaintiff's success. Green, 284 F.3d at 661 ("the results obtained" are to be considered in adjusting lodestar). Defendant argues that Plaintiff did not prevail on his claims for violation of the Equal Protection Clause of the Fourteenth Amendment or violation of 42 U.S.C. § 1981. Therefore, Defendant contends that the Court's lodestar figure should be reduced by one-third based on Plaintiff's failure to prevail on those claims.

"[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Abner v. Kan. City S. Ry. Co., 541 F.3d 372, 382 (5th Cir. 2008) (quoting Hensley v. Eckerhart, 461 U.S. 424, 435, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). "[A] fee award is unreasonable if a court has failed to adequately consider the 'relationship between the amount of the fee awarded and the results obtained.'" Id. at 379 (quoting Hensley, 461 U.S. at 437, 103 S. Ct. 1933). This Court "must consider in tandem the reasonableness of the fees and costs and the level to which [Plaintiff] prevailed." Id.

The United States Supreme Court has explained how a trial court must balance the reasonableness of fees with the level of a plaintiff's success in a civil rights case:

> Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.

15

> Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.
>
> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. . . . Again, the most critical factor is the degree of success obtained.

Hensley, 461 U.S. at 435, 103 S. Ct. 1933 (internal citation and footnote omitted). The Fifth Circuit Court of Appeals has stated that district courts should "cut out the fees charged for work on unsuccessful claims" while remaining mindful of a plaintiff's success with respect to the "major thrust" of the litigation. Abner, 541 F.3d at 383-84. "The proper focus is whether the plaintiff has been successful on *the central issue* . . . as exhibited by the fact that he has acquired *the primary relief sought*." Uviedo v. Steves Sash & Door Co., 738 F.2d 1425, 1432 (5th Cir. 1984) (quoting Commonwealth Oil Ref. Co., Inc. v. EEOC, 720 F.2d 1383, 1385 (5th Cir. 1983), *reh'g en banc denied*, 734 F.2d 1479 (5th Cir. 1984)).

Plaintiff voluntarily abandoned his Fourteenth Amendment and Section 1981 claims and later sought to reassert them. As Plaintiff's abandonment of these claims was the result of admitted error on the part of his counsel, and as Plaintiff's attempt to reassert them was unsuccessful, the Court shall make a downward adjustment to the lodestar. However, much of the work involved in litigating this case would be necessary regardless of the presence or absence of the Fourteenth

Amendment and Section 1981 claims. Accordingly, the Court shall only deduct those hours expended on tasks solely related to the abandoned claims. See Hensley, 461 U.S. at 435, 103 S. Ct. 1933 (civil rights cases often involve various legal claims stemming from a common core of facts). Upon examination of the records submitted by Plaintiff, the Court finds that the following entries are solely related to the abandoned claims:

| Attorney | Date | Task | Time[10] |
|---|---|---|---|
| Waide | 6/23/09 | Legal Research; prepared and sent Motion to Reassert 42 USC 1981 Claim | 3.00 |
| Waide | 7/2/09 | Review of authorities; prepared, edited and sent Brief in Support of Motion to Reassert 1981 Claim | 2.50 |
| Waide | 7/2/09 | Received and reviewed Response in Opposition to Motion to Reassert 1981 claim | 0.20 |
| Waide | 7/8/09 | Received and Reviewed Order Denying Motion to Reassert | 0.20 |
| | | **Total:** | **5.90** |

Accordingly, the Court reduces the lodestar figure to $110,421.50.[11]

Defendant makes no further arguments in favor of reducing the lodestar figure. Upon examination of the remaining Johnson factors and Plaintiff's brief discussion of them, the Court does not believe that further adjustment to the lodestar is warranted. Therefore, the Court awards Plaintiff $110,421.50 in attorney's fees.

Finally, Plaintiff has requested $5,519.07 in costs associated with litigation. "Unless a

---

[10]Where Plaintiff included multiple tasks in a single entry, the Court exercised its discretion and determined an appropriate amount of time to deduct from each entry for the work related to the abandoned claims.

[11]$111,985.00 - ($265.00 / 1 hour)(5.90 hours) = $110,421.50

federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs - other than attorney's fees - should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). Defendant does not dispute the $5,519.07 in costs requested by Plaintiff for this case. Therefore the Court awards Plaintiff $5,519.07 in costs.

## VI. CONCLUSION

For the reasons stated above, the Court:

(1)     further remits the back pay awarded to Plaintiff by $27,268.56;

(2)     denies Plaintiff's Motion for Leave to Substitute a Request for Reinstatement in Lieu of Front Pay [131];

(3)     grants Plaintiff's Motion for Back Pay Until Date of Court's Ruling on Post-Trial Motions [116];

(4)     grants Plaintiff's Motion for Front Pay [116]; and

(5)     grants in part Plaintiff's Motion for Attorney Fees [136].

Accordingly, Plaintiff's final award in this matter consists of the following: $81,988.75 in back pay; $200,000.00 in emotional damages; $27,966.00 in front pay; $110,421.50 in attorney's fees; and $5,519.07 in costs.

An Order in accordance with this Opinion shall issue on this the 25th day of February, 2010.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**